UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATEEN GROCE,<br>    Plaintiff,<br><br>v.<br><br>CITY OF PHILA. LAW DEPT., *et al.*<br>    Defendants. | :<br>:<br>:<br>:   No. 21-cv-5132<br>:<br>:<br>: |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                                                       **February 17, 2022**
**United States District Judge**

       Plaintiff Fateen Groce, a convicted prisoner currently incarcerated at SCI-Camp Hill, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 based on allegations that he was maliciously prosecuted on charges of attempted rape, involuntary deviate sexual intercourse, and aggravated indecent assault. (*See* ECF No. 2.) Groce seeks leave to proceed i*n forma pauperis*. For the following reasons, the Court will grant Groce leave to proceed *in forma pauperis* and (1) dismiss his claims against the City of Phila. Law Dept., Office of the City Solicitor, and Civil Rights Unit with prejudice; (2) dismiss his state law claims with prejudice; and (3) dismiss his remaining claims without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), with the exception of his malicious prosecution claims against Detective McGoldrick, Detective Price, Detective Ruth, Officer Vivarina, and Officer Travaline, which will be permitted to proceed.

**I.**     **FACTUAL ALLEGATIONS**

       Groce has named the following Defendants: (1) City of Phila. Law Dept.; (2) Office of the City Solicitor; (3) Civil Rights Unit; (4) Detective McGoldrick (#8011); (5) Detective Price (#9255); (6) Detective Ruth (#9232); (7) Officer Vivarina (#5132); (8) Officer Travaline

(#1918); and (9) Denise Stippick.[1] (ECF No. 2 at 2.)[2] Groce asserts the following claims: (1) malicious prosecution; (2) due process violation; (3) civil rights conspiracy; (4) failure to intervene; (5) supervisory liability; (6) municipal liability; and (7) "Pennsylvania law violations." (*Id.* at 2-3, 9.) Briefly stated, Groce avers that he has been "convicted and sentenced on different allegations unlawfully" and the "defendants work[ed] individually and in concert, fabricat[ing] statements, coerc[ing] false statements and [they] withheld exculpatory evidence." (*Id.* at 3, 10.) In other words, Groce's claims arise out of an alleged conspiracy among the Defendants to manufacture criminal charges against him.

Groce's Complaint sets forth events that allegedly occurred with Stippick on June 14, 2019, identifying her as the "complainant." (ECF No. 2 at 3-5.) Groce avers that he met Stippick and invited her back to his room at the Harrison Hide Out Bar to watch movies and have a couple of drinks, noting that Stippick was already carrying a bag containing "Fireball" from the liquor store. (*Id*. at 3-4.) Once they arrived in his room, Groce stated that Stippick removed her pants, which prompted him to tell her to "put [her] stuff back on and . . . leave." (*Id*. at 4.) Groce stated that "without a question [Stippick] walked out" and went downstairs to the bar. (*Id*.) Groce also left his room and noticed Stippick was talking to "Bartender Ashley." (*Id*.) When Groce asked Ashley if Stippick was okay, Ashley told him to "just go." (*Id*.) When Groce returned to his residence the next morning (after allegedly being "robbed" and spending the night at Nazareth Hospital), "Bartender Nicole" told him that "the girl who was in [his] room said [he] raped her." (*Id*. at 5.) Groce was shocked. (*Id*.) Groce's landlord also told him that

---

[1] The Court notes that on the form portion of Groce's Complaint where he was asked to list the Defendants, he checked both the "individual capacity" and "official capacity" boxes for Defendants McGoldrick, Ruth, Vivarina, and Travaline. (ECF No. 2 at 8, 9.)
[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

the police were "out there all night long waiting for [him] to come back, but nobody believed her because she looked like she was lieing [sic]." (*Id*.)

Groce avers that the "day after date of complaint," Defendants brought Stippick and "character witness" John Verkitus back to the police station "to provide fabricated and coerced false statements." (*Id*. at 5.) Groce asserts that Defendants McGoldrick and Ruth took Stippick's statement, and Vivarina and Travaline "coerced the complaint with the fabricated statements." (*Id*.) The statements of Stippick and Verkitus implicated Groce in the criminal conduct, and Groce asserts that their statements "deviated in material ways from the initial situation." (*Id*. at 5-6.) Groce avers that McGoldrick, Price, Ruth, Vivarina, and Travaline failed to investigate further and failed to report the "entirety of the interaction" between him and Stippick. (*Id*. at 6.) He asserts that these Defendants also failed to obtain "exculpatory evidence" and details to strengthen the credibility of the witness statements. (*Id*.) Groce avers that the "on-scene Defendants" located additional witnesses to implicate him in criminal conduct. (*Id*.) Groce contends that the witness "statements and affidavits of probable cause include false details of the alleged incident," and the Defendants provided the Philadelphia District Attorney's Office "with false misleading and incomplete information in order to obtain approval" for his arrest and prosecution. (*Id*.) Groce asserts that these charges were dismissed on November 14, 2019.[3] (*Id*. at 11.)

---

[3] A review of public records demonstrates that Groce was convicted of rape of an unconscious victim, sexual assault, and indecent assault without consent of another on December 2, 2020. *See Commonwealth v. Groce*, Docket No. CP-51-CR-0002098-2018 (C.P. Phila.). The state court docket indicates that Defendant Price was the arresting officer on the charges for this conviction, but the docket notes an incident date of July 31, 2002, and an arrest date of February 2, 2018. (*Id*.) Groce was sentenced to a term of five to ten years imprisonment on November 3, 2021. (*Id*.) This conviction has not been vacated or otherwise invalidated. (*Id*.)

The dates recorded in this public record of Groce's conviction do not match the dates that Groce asserts for the allegations that form the basis of his claims in this case. Accepting his

Groce asserts that McGoldrick, Price, and "Mr. Enriquez"[4] each had "personal involvement knowingly eliciting or coercing fabricated witness statements," which was concealed from him and the prosecutors. (*Id.* at 7.) He avers that McGoldrick, as the lead investigator, was responsible for overseeing the investigation and gathering the evidence and had "actual knowledge of or acquiesced in the misconduct detailed in the complaint." (*Id.*)

Groce avers that he has been deprived his life and liberty, and he has suffered post-traumatic stress disorder which requires him to undergo mental health evaluations and be prescribed medication. (*Id.* at 11.) Groce also asserts state law claims of intentional infliction of emotional distress, defamation, libel, and slander. (*Id.*) In his request for relief, Groce seeks actual damages in the amount of $270,000 and compensatory/consequential damages in the amount of $650,000.

## II.   STANDARD OF REVIEW

The Court will grant Groce leave to proceed *in forma pauperis* because it appears he is not capable of prepaying the fees to commence this action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which require the Court to dismiss the Complaint if it fails to state a

---

allegations as true, as the Court is required to do when screening his complaint under 28 U.S.C. § 1915(e)(2)(B), and because it cannot be determined at this time whether Groce's claims involve the above-cited conviction, the Court cannot reach a conclusion on statutory screening whether the aforementioned conviction constitutes a bar to proceeding with Groce's claims. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]") (footnote and citation omitted). Accordingly, the Court will reserve this question to a later point in the proceedings.
   [4] Mr. Enriquez is not listed as a Defendant, nor is he otherwise identified in the Complaint.
   [5] However, as Groce is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations and naked assertions will not suffice. *Iqbal*, 556 U.S. at 678. As Groce is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F. 3d at 245).

### III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims against the City of Phila. Law Dept., Office of the City Solicitor, and Civil Rights Unit, and Official Capacity Claims

Groce includes the "City of Phila. Law Dept., Office of the City Solicitor, [and] Civil Rights Unit" in the caption of his Complaint but does not refer to or make any allegations against any of those entities in the body of his Complaint, nor does he list them separately as Defendants on the form complaint. (ECF No. 2 at 2, 8-9.) The Law Department for the City of Philadelphia, which is led by the City Solicitor, acts as general legal counsel for the entire City government structure. *See* https://www.phila.gov/departments/law-department/ (last viewed 2/17/2022).[6] The Litigation Group of the Law Department includes the Civil Rights Unit, which defends all lawsuits filed against the City and its employees in which it is alleged that an individual's constitutionally- protected rights have been violated. *See* https://www.phila.gov/departments/law-department/practice-groups/litigation-group/ (last viewed 2/17/2022). If Groce intended to include claims against these entities, he has not adequately done so, and any such claim must be dismissed. Moreover, city agencies are not entities subject to suit under § 1983 because they do not have a separate legal existence. *See*

---

[6] The Court may take judicial notice of the information published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017) ("To the extent that we rely on information beyond what the government included in its amicus brief, that information is publicly available on government websites and therefore we take judicial notice of it.").

6

*Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Vangjeli v. City of Phila*, No. 15-1566, 2015 WL 5793926, at *3 (E.D. Pa. Sept. 30, 2015), *aff'd sub nom., Vangjeli v. City of Philadelphia*, 655 F. App'x 132 (3d Cir. 2016) (Free Library is not an entity subject to suit since no department or agency of the City of Philadelphia has a separate corporate existence) (quoting 53 Pa. C.S.A. § 16257); *Bush v. City of Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing the Philadelphia Police Department as a matter of law because it is not a legal entity separate from the City of Philadelphia); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (dismissing City of Philadelphia Police Department and the City of Philadelphia Police Department Northeast Detective Division).  Accordingly, the claims against the "City of Phila. Law Dept., Office of the City Solicitor, [and] Civil Rights Unit" are not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

By naming these Defendants, Groce may have intended to assert a municipal liability claim against the City of Philadelphia.[7]  To plead a basis for municipal liability under § 1983, a

---

[7] In the handwritten portion of his Complaint, Groce specifically asserts that McGoldrick, Price, Ruth, Vivarina, Travaline, and Stippick are being sued in their individual capacities.  (ECF No. 2 at 2.)  As noted, however, on the form portion of his Complaint, Groce checked the boxes indicating that he also seeks to name each of the police officer defendants in their official capacities.  (*Id*. at 8-9.)  Claims against City officials named in their official capacity are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*
    Groce makes the following *Monell*-type allegations, all of which are unsupported by any factual allegations and are, thus, conclusory in nature:

plaintiff must allege that the City's policies or customs caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must allege that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers

---

> 1.) using coercive techniques to obtain statements 2.) prolonged interrogatory interviews 3.) fabricating incriminating statements from witnesses 4.) failing to discipline officers who engaged in the unconstitutional conduct 5.) ignoring systematic police misconduct and abuse of civilian rights 6.) failing to discipline officers who fail to report the unconstitutional conduct of fellow officers.

(ECF No. 2 at 7.)

8

know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the United States Court of Appeals for the Third Circuit has stated,

> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Groce has not sufficiently alleged a municipal policy or custom that would support a plausible claim against the City of Philadelphia. Simply alleging that one's rights have been violated due to a policy is not enough to state a claim for municipal liability. *McTernan*, 564 F.3d at 658. Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Groce makes no allegation regarding a specific custom or policy by which municipal liability claims may be maintained against the City of Philadelphia. He has also failed to allege that the City had actual knowledge of prior similar conduct or failed to prevent the repetition of such conduct, and that this failure led to his injury. Further, Groce has not alleged that the City

or its agents failed to supervise, train, or discipline its employees resulting in the alleged violation of Groce's constitutional rights. Thus, Groce's official capacity claims will be dismissed without prejudice for failure to state a claim.

### B. Malicious Prosecution/Due Process Claims

Groce contends that the Defendant officers obtained false witness statements, included false details in the affidavit of probable cause, and provided the Philadelphia District Attorney's Office "with false misleading and incomplete information in order to obtain approval" for his arrest and prosecution. (ECF No. 2 at 6.) Although Groce indicates an intention to raise a due process claim, his allegations are predominately grounded in his assertion that he was maliciously prosecuted on charges of attempted rape, involuntary deviate sexual intercourse, and aggravated indecent assault, so his claims are best analyzed as a malicious prosecution claim under the Fourth Amendment, rather than a due process claim. *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause as a catch all). Accordingly, any substantive due process claims are dismissed without prejudice.

As the Third Circuit has recognized, "[t]he dividing line between false arrest/imprisonment claims and malicious prosecution claims is the initiation of legal process. Arrests made pursuant to a 'validly issued – if not validly supported – arrest warrant' generally

10

occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." *Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160, 166 (3d Cir. 2017) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *see also Johnson v. United States*, 852 F. App'x 645, 647 (3d Cir. 2021) (*per curiam*) ("[T]he Magistrate Judge correctly concluded that because Johnson was arrested pursuant to a warrant, his claims for false arrest and false imprisonment were, in essence, malicious prosecution claims.").

According to Groce's Complaint, following the "fabricated" statements made by Stippick and others, he was arrested pursuant to a warrant that had been issued for charges of attempted rape, involuntary deviate sexual intercourse, and aggravated indecent assault. (ECF No. 2 at 6.) Because Groce was "detained pursuant to legal process, . . . his false arrest/imprisonment § 1983 claims all actually sound in malicious prosecution[.]" *See Noviho*, 683 F. App'x at 166 (explaining that "a Pennsylvania 'court case' is initiated by 'the filing of a complaint, *followed by* the issuance of a summons or arrest warrant[]'" and concluding that plaintiff's false arrest and imprisonment claims were actually malicious prosecution claims) (emphasis in original, citation omitted).

"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). "In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an

individual." *Hall v. City of Philadelphia L. Dep't*, No. 19-0110, 2020 WL 5820731, at *12 (E.D. Pa. Sept. 30, 2020) (citing *Harris v. City of Philadelphia,* No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 279 n. 5 (1994)); *see also Butler v. City of Philadelphia*, No. 12-1955, 2014 WL 4652276, at *5 (E.D. Pa. Sept. 17, 2014). "However, a police officer may be held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion, [because] . . . [i]n such cases, an intelligent exercise of the . . . [prosecutor's] discretion becomes impossible, and a prosecution based on the false information is deemed procured by the person giving the false information." *Id.*

Because Groce alleges that the criminal charges asserted against him were based upon fabricated statements submitted by the Defendant police officers, and those charges were subsequently dismissed on November 14, 2019, the Court will permit Groce to proceed on his malicious prosecution claims against Defendants McGoldrick, Price, Ruth, Vivarina, and Travaline at this time.

### C.   Civil Rights Conspiracy Claims

Since Groce alleges that all the Defendants engaged in a conspiracy, the Court will also analyze whether he has alleged a plausible civil rights conspiracy claim.[8] To sufficiently allege a § 1983 conspiracy, a plaintiff must show "a combination of two or more people to do a criminal

---

[8] Groce avers that Stippick, who is alleged to be the "complainant" in his criminal case, acted "in concert" with the named officers by allegedly fabricating statements to incriminate him in criminal conduct. (ECF No. 2 at 3, 5-6.) Although participation in a police investigation does not necessarily render a private person a state actor for purposes of § 1983 (*see Baack v. Rodgers*, No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014), a private party "who corruptly conspire[s]" with a state official will be considered a state actor under § 1983. *Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010)) (internal quotation marks omitted).

act, or to do a lawful act by unlawful means or for an unlawful purpose." *Marchese v. Umstead,* 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000), *quoting Hammond v. Creative Financial Planning Org.,* 800 F. Supp. 1244, 1248 (E.D. Pa. 1992). "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989). Like any other conspiracy claim, a § 1983 conspiracy must be based on particularized allegations. *Id.* ("Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient.").

Section 1985(3) creates a separate cause of action against any two or more persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). While there is no "state actor" requirement like for § 1983, significantly, "'[t]he [statutory] language [in § 1985] requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-*

*CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Moreover, a plaintiff must allege specific facts in order to sustain a § 1985(3) claim:

> With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3).  A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals.

*Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972); *see also Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient.").  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Groce's allegations about his malicious prosecution cannot support a plausible civil rights conspiracy under §§ 1983 or 1985.  Groce's conspiracy allegations are wholly conclusory.  He has not alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, nor has he set forth factual allegations addressing the period of the conspiracy or actions taken by the alleged conspirators to achieve the alleged purpose of manufacturing criminal charges against him.  Further, Groce has not alleged that any of the Defendants were motivated by a racial or class based discriminatory animus designed to deprive him of the equal protection of the laws.  Because Groce's conspiracy allegations centering on the parties' involvement with his criminal prosecution are wholly conclusory, they are insufficient to satisfy the pleading standard.  *Iqbal*, 556 U.S. at 678; *Robinson*, 462 F.2d at 113.  The Court will dismiss Groce's civil rights conspiracy claims without prejudice.

### D. State Law Claims

Groce assert state law claims for intentional infliction of emotional distress, defamation, libel, and slander. (*See* ECF No. 2 at 11.) These state law claims are subject to dismissal because they are untimely. The statute of limitations in Pennsylvania for an action for defamation, libel, and slander is one year. *See* 42 Pa. Cons. Stat. § 5523 (governing an action for libel, slander, or invasion of privacy). Claims for intentional infliction of emotional distress are governed by Pennsylvania's two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524. The alleged tortious action, the "fabricated and coerced false statements," which were used to effectuate Groce's arrest and prosecution, were made on June 15, 2019. (ECF No. 2 at 5-6.) Groce did not file this case until November 15, 2021, more than two years later. These claims are, accordingly, facially untimely.

In Pennsylvania, however, the discovery rule may operate to delay the running of the statute of limitations in certain circumstances. *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) (holding that "the discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct") (citing *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)). "As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Fine*, at 859. "The reasonable diligence standard is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law." *Nicolaou*, 195 A.3d at 893 (citations omitted). However, "the objective reasonable diligence standard is 'sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" *Id.* (quoting *Fine*, 870 A.2d at 858).

15

Whether or not Pennsylvania's discovery rule applies in a given case is a question of fact. *Id.* at 894; *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011). As such, it is properly a question for the jury unless no reasonable juror could find otherwise. *Fine*, 870 A.2d at 858-59. "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

Here, the untimeliness of the claim is apparent on the face of the complaint. Groce knew or should have reasonably been aware that he had been injured and that his injury had been caused by the allegedly false statements made by Stippick in June 2019. In fact, Groce avers in his Complaint that he was "shocked" when he was informed by "Bartender Ms. Nicole" on June 15, 2019 that Stippick had stated that Groce "raped her" the night before. (ECF No. 2 at 5.) Because he failed to bring these claims within the statute of limitations proscribed, they must be dismissed as untimely[9] and, thus, implausible under § 1915(e)(2)(B)(ii).

IV.  **CONCLUSION**

For the foregoing reasons, the Court will grant Groce leave to proceed *in forma pauperis*. Groce's claims against the City of Phila. Law Dept., the Office of the City Solicitor, and the Civil Rights Unit will be dismissed with prejudice. Groce's state law claims based on libel, slander, defamation, and intentional infliction of emotional distress against all Defendants will also be dismissed with prejudice. The Court will dismiss Groce's remaining claims, except for his Fourth Amendment malicious prosecution claims against Defendants Detective McGoldrick,

---

[9] According to an exhibit attached to Groce's motion for appointment of counsel, Groce was arrested pursuant to a warrant for the incident involving Stippick on July 22, 2019. *See* ECF No. 8 at 9. Accordingly, even if he had not been made aware of all of the allegedly false or coerced statements prior to that date, he would have known or should have known about all of the statements at the time his arrest.

Detective Price, Detective Ruth, Officer Vivarina, and Officer Travaline, without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Groce will be given the option of proceeding at this time on his malicious prosecution claims against Defendants McGoldrick, Price, Ruth, Vivarina, and Travaline or filing a comprehensive amended complaint. If Groce chooses not to file an amended complaint, the Court will direct service only as to McGoldrick, Price, Ruth, Vivarina, and Travaline so that Groce may proceed on his malicious prosecution claims. An appropriate Order follows, which in part provides further guidance to Groce about his options for proceeding.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**