UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FATEEN GROCE, :
    Plaintiff, :
     :
    v. : No. 2:21-cv-5132
     :
DETECTIVE MCGOLDRICK, *et al.*, :
    Defendants. :

**O P I N I O N**
**Defendant's Motion for Summary Judgment, ECF No. 68 – Granted**

**Joseph F. Leeson, Jr.**                                                                **November 27, 2023**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Fateen Groce claims that he was maliciously prosecuted for attempted rape and related charges. The charges were listed in a probable cause affidavit prepared by Detective McGoldrick who, along with other officers of the Philadelphia Police Department, is named as a defendant in the above-captioned action. Defendants have filed a Motion for Summary Judgment arguing that Groce has failed to adduce any affirmative evidence to support his claims. For the reasons set forth below, the Motion for Summary Judgment is granted.

## II.    PROCEDURAL HISTORY

On November 15, 2021, Groce initiated the above-captioned *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Compl., ECF No. 2. The Complaint asserted claims for: (1) malicious prosecution; (2) due process violation; (3) civil rights conspiracy; (4) failure to intervene; (5) supervisory liability; (6) municipal liability; and (7) "Pennsylvania law violations" against nine (9) defendants. *See id.* Four (4) of these defendants were dismissed with prejudice

when this Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2). *See* ECF Nos. 11-12. Also dismissed with prejudice on screening were Groce's state law claims, while his claim for civil rights conspiracy was dismissed without prejudice. *See id.* His substantive due process claim was dismissed because his allegations were best analyzed as a malicious prosecution claim, which was allowed to proceed. *See id.* Groce's subsequent motions for reconsideration were denied and his time to file an amended complaint was twice extended. *See* ECF Nos. 13-14, 22, 27-28. After the extended deadline passed without the filing of an amended complaint, all but Groce's malicious prosecution claim was dismissed with prejudice. *See* ECF No. 31. Defendants answered the claim and have now moved for summary judgment. *See* ECF Nos. 49, 68. Groce filed three documents in opposition to Defendants' Motion for Summary Judgment. *See* First Opp., ECF No. 74; Second Opp., ECF No. 77; Third Opp., ECF No. 79.

### III. UNDISPUTED[1] FACTS

On June 14 -15, 2019, Denise Stippick spoke with Detective McGoldrick of the Special Victims Unit, Philadelphia Police Department, and reported the following.[2] *See* Stmt Facts ¶ 2,

---

[1] Defendants' Statement of Undisputed Facts are properly supported with citations to the record and the cited records are attached as exhibits. *See* Stmt. Facts and Exs., ECF Nos. 68-1, 68-2. Conversely, Groce has not filed a statement of undisputed facts, made any citations to record evidence, nor responded to Defendants' Statement as required by this Court's scheduling Order dated November 23, 2022, ECF No. 51. Accordingly, Defendants' Statement of Undisputed Facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); *Schuenemann v. United States*, No. 05-2565, 2006 U.S. App. LEXIS 4350, at *15 n.7 (3d Cir. 2006) (holding that the district court properly deemed the defendants' statement of facts as undisputed for purposes of deciding the motion for summary judgment where the plaintiff failed to respond to each numbered paragraph of the defendants' statement of facts). However, considering Groce's *pro se* status, the Court will not deem any fact undisputed if it is contested in any of Groce's responses to the summary judgment motion. To the extent any of the facts discussed herein are disputed, they are so noted and distinguished accordingly.

[2] Groce does not dispute that Ms. Stippick spoke with Detective McGoldrick or that she gave the account discussed herein. Rather, he disputes the veracity of the contents of her

ECF No. 68-1; Stippick Stmt 2, Ex. A, ECF No. 68-2.  At approximately 7:30 P.M. on June 14, 2019, Ms. Stippick encountered a male, whom she subsequently identified as Groce, when she was walking to the bus at Frankford Terminal in Philadelphia after work.  *See* Stmt Facts ¶¶ 1, 3; Stippick Stmt 2.  Ms. Stippick, who was originally from Iowa, asked Groce for directions.  *See* Stmt Facts ¶ 3; Stippick Stmt 2.  Groce walked her towards Torresdale Avenue, grabbed her by the throat, and dragged her up twenty steps into a bedroom.  *See* Stmt Facts ¶ 4; Stippick Stmt 2-3.  While in the room, Groce popped a button off her blouse and attempted to rip off her bra and pants while she attempted to fight him off.  *See* Stmt Facts ¶ 5; Stippick Stmt 2-3.  She kicked Groce off and when he turned his back, ran out of the room and into the bar downstairs crying for help.  *See* Stmt Facts ¶ 6; Stippick Stmt 2.

Detective McGoldrick reported that Ms. Stippick "cried throughout the entire statement, tears were running down her face, she used numerous tissues to wipe away tears."  *See* Stippick Stmt 4.  Ms. Stippick was "crying hysterically," according to Detective McGoldrick, when Defendant Detective Ruth showed her Groce's photo in a photo array.  *See id.*  Detective Ruth reported a similar reaction.  *See* Ruth Report 3, Ex. B, ECF No. 68-2.  Specifically, Detective Ruth showed Ms. Stippick six (6) photographs of males matching the description Ms. Stippick gave of her attacker.  *See generally id.*; Stippick Stmt 2; Stmt Facts ¶ 8.  For each photo, aside from Groce's, Ms. Stippick stated that she did not recognize the individual pictured.  *See* Ruth Report 2-3; Stmt Facts ¶ 8.  When shown Groce's photograph, the fourth, however, Ms. Stippick "immediately started crying 'that's him' 'that's him,'" identifying Groce as the person who

---

statement.  *See* Second Opp. 7, ¶ 14 (McGoldrick "was the Detective to interview and transcribe these false allegations *verbatim* in the investigation interview records." (emphasis added)).  In reciting the contents of Ms. Stippick's statement herein, the court makes no findings as to the truthfulness of her statement, only that the information was reported to Detective McGoldrick.

assaulted her. *See id.* Ms. Stippick, according to Detective Ruth, was "very excited upset" when shown Groce's photograph and had a hard time signing it. *See* Ruth Report 3.

Ms. Stippick informed Detective McGoldrick that she had scratches on her chest and stomach from when Groce was trying to rip her clothes off, scratches around her neck from Groce grabbing her, and soreness in her neck and back from Groce grabbing her and carrying her up the steps. *See* Stippick Stmt 3. Her injuries were photographed by Detective Farrell of the Special Victims Unit, Philadelphia Police Department. *See* McGoldrick Report 1, Ex. D (dated July 19, 2019), ECF No. 68-2;[3] Stmt Facts ¶ 15.

Ms. Stippick was accompanied to the Philadelphia Police Department the night of her attack by her boyfriend, John Verkitus, who also gave a statement to Detective McGoldrick. *See* Verkitus Stmt, Ex. C, ECF No. 68-2. Mr. Verkitus gave the following account. Mr. Verkitus dropped Ms. Stippick off at her work at the Olive Garden on Roosevelt Boulevard, Philadelphia on the evening of June 14, 2019, at 6:00 P.M. *See id.*; Stmt Facts ¶ 9. At approximately 7:20 P.M., he received a call from Ms. Stippick's manager at work who told him that Ms. Stippick had had a panic attack and that he should come pick her up. *See* Stmt Facts ¶ 9; Verkitus Stmt 2. When Mr. Verkitus arrived to pick Ms. Stippick up, she was not there. *See* Stmt Facts ¶ 10; Verkitus Stmt 2. Mr. Verkitus went home to wait and at approximately 10:00 P.M., Ms. Stippick arrived home and "literally collapsed in [his] arms." *See* Stmt Facts ¶ 11; Verkitus Stmt 2. She was upset, "eye shadow down her face, crying hysterically," "all bloodied, her chest, her back, her neck was all torn up, all scratches." *See* Stmt Facts ¶ 11; Verkitus Stmt 2-3. Mr. Verkitus stated that he had never seen her like that, as though "she must have went through a battle." *See*

---

[3]   Detective McGoldrick documented that Ms. Stippick "received numerous scratches to her neck, arms, chest, stomach and vaginal area." *See* McGoldrick Report 1.

Verkitus Stmt 2-3.  He explained to Detective McGoldrick that Ms. Stippick told him she got attacked and dragged into a house and up the steps into an apartment, that the assailant locked the door and tried to rape her, but she was able to fight him off and kick the door open and run out.  *See* Stmt Facts ¶ 12; Verkitus Stmt 2-3.  Mr. Verkitus and Ms. Stippick went back to the location.  *See* Stmt Facts ¶ 13; Verkitus Stmt 2-3.  There, he cracked the door to the apartment and could see inside, where there was an air mattress, an air conditioner, and the liquor store bag and receipt that Ms. Stippick told him she was carrying when she was grabbed.  *See id.*  Seeing the apartment, Ms. Stippick was very upset.  *See* Verkitus Stmt 3 (describing Ms. Stippick as "a mess").  They went downstairs to the bar where the bartender told Mr. Verkitus that the male who lives in the apartment above the bar came into the bar looking for Ms. Stippick.  *See* Stmt Facts ¶ 14; Verkitus Stmt 3.

     Mr. Verkitus and Ms. Stippick called the police from the bar.  *See* PC Affidavit, Ex. E, ECF No. 68-2.  Officers Travaline and Vivarina of the Philadelphia Police Department responded to the apartment: 6378 Torresdale Avenue, Apartment A.  *See id.*  Ms. Stippick advised them what had occurred in the apartment.  *See id.*  She and Mr. Verkitus then went to the Philadelphia Police Department and gave the statements just described to Detective McGoldrick of the Special Victims Unit.  *See id.*  Police secured a search warrant to process the apartment the morning of June 15, 2019.  *See* McGoldrick Report 4.

     On June 15, 2019, Detective McGoldrick drafted an affidavit of probable cause for Groce's arrest including and/or summarizing much of the information and statements just discussed.[4]  *See* Stmt Facts ¶ 16; McGoldrick Report 4.  He re-sent the affidavit of probable

---

[4]    Groce, without any citations to the record or any support for his statement, contends that Officers Travaline and Vivarina wrote the criminal complaint.  *See* First Opp. 3.  However, he also alleges that "Officer Travaline conceded that him [sic] and Officer Vivarina prepared a

5

cause for Groce's arrest on July 18, 2019, and it was approved by the Philadelphia District Attorney's Office ("DAO") the same day. *See* Stmt Facts ¶ 17; McGoldrick Report 4. The following day, a magistrate judge signed the arrest warrant charging Groce with attempted rape and related offenses. *See* Stmt Facts ¶ 18; PC Affidavit. Groce was arrested on July 22, 2019, by Detective Price of the Philadelphia Police Department on the charges of attempted rape and related offenses. *See id.*; Arrest Report 1, Ex. F, ECF No. 68-2. Groce was held in custody during the prosecution of this case.[5] *See* DAO File, Ex. H, ECF No. 68-2. At a preliminary hearing on August 8, 2019, September 12, 2019, and October 10, 2019, the DAO was not ready to proceed due to Ms. Stippick's failure to appear as she moved back to Iowa and the hearings were continued. *See id.*; Stmt Facts ¶ 20. At the next listing, on November 14, 2019, the DAO was again not ready to proceed and, thus, withdrew prosecution. *See* DAO File; Stmt Facts ¶ 21.

---

complaint *or* incident report," and that the names of Officers Travaline and Vivarina "are at the bottom of the complaint *or* incident report." *See id.* 16-17 (emphasis added). *See also* Second Opp. 6. A criminal complaint and an incident report are two different types of documents. Given Groce's confusion and considering evidence affirmatively showing that only Detective McGoldrick's name is on the criminal complaint and that he drafted the charges, *see* McGoldrick 4; PC Affidavit, Groce has not established a genuine dispute of fact on this issue. *See* Second Opp. 7 (agreeing McGoldrick was the affiant for the affidavit of probable cause for arrest).

[5]   At the time of his arrest and of the alleged attempted rape of Ms. Stippick, Groce was out on bail for a different case in Philadelphia County– a rape that he was being prosecuted for under case number CP-51-CR-0002098- 2018. *See* Stmt Facts ¶ 19; Arrest Report 2; Docket Sheet, Ex. G, ECF No. 68-2. Groce was convicted in the rape case on December 2, 2020. *See* Stmt Facts ¶ 22; Docket Sheet 12. He was sentenced on November 2, 2021, to five (5) to ten (10) years of imprisonment with time credit to be calculated by the Prison System. *See* Stmt Facts ¶ 23; Docket Sheet 5, 13. The Pennsylvania Department of Corrections ("DOC") credited Groce for his time served in connection with his arrest and prosecution for the attempted rape of Ms. Stippick. *See* Stmt Facts ¶¶ 24-25; Sent. Status Sum. 1, ECF No. I.

## IV.     LEGAL STANDARDS

### A.     Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

B. **Malicious Prosecution – Review of Applicable Law**

"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). "In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual." *Hall v. City of Philadelphia L. Dep't*, No. 19-0110, 2020 WL 5820731, at *12 (E.D. Pa. Sept. 30, 2020) (citing *Harris v. City of Philadelphia*, No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 279 n. 5 (1994)); *see also Butler v. City of Philadelphia*, No. 12-1955, 2014 WL 4652276, at *5 (E.D. Pa. Sept. 17, 2014). "However, a police officer may be held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion, [because] . . . [i]n such cases, an intelligent exercise of the . . . [prosecutor's] discretion becomes impossible, and a prosecution based on the false information is deemed procured by the person giving the false information." *Id.* The purpose of the second element, referred to as the favorable termination rule, "is to avoid 'the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). "The element of

8
112723

favorable termination is established by showing that the proceeding ended in any manner that indicates the innocence of the accused, which can be satisfied when charges are formally abandoned by way of a nol pros." *Geness v. Cox*, 902 F.3d 344, 356 (3d Cir. 2018) (internal quotations and citations omitted). A nol prosse in itself is insufficient; however, the district court must conduct a fact-based inquiry, considering the underlying facts of the case, the particular circumstances prompting the nol pros, and the substance of the request for a nol pros, to determine whether the nol pros provides an indication that the accused is actually innocent of the crimes charged. *See id.* As to the third element, probable cause exists if at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The "evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

**V.     ANALYSIS**

    **A.     Groce has failed to produce evidence showing the personal involvement of Detective Price, Officer Vivarina, and Officer Travaline in his alleged malicious prosecution.**

To state a claim for malicious prosecution, Groce must produce evidence showing that each Defendant was personally involved. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)). Groce has failed to produce such evidence as to Detective Price, Officer Vivarina, and Officer Travaline. There is no evidence that these Defendants prepared any investigative reports or criminal complaints, provided any information

to the DAO prior to charges being filed, or were otherwise involved with the charging decision/recommendations. *See Mills v. City of Phila.*, No. 14-593, 2023 U.S. Dist. LEXIS 180524, at *33 (E.D. Pa. Oct. 5, 2023) (granting the City's motion for summary judgment because the plaintiff failed to establish the officer's personal involvement in her prosecution and thus the initiation element of her malicious prosecution claim where the officer was not involved in, *inter alia*, drafting the search warrant or the subsequent court proceedings). Rather, it appears that Groce included them as Defendants simply because their names appear in the various police reports, which is not sufficient to show their personal involvement in the alleged malicious prosecution. *See Mitchell v. Obrien*, No. 16-3556, 2017 U.S. Dist. LEXIS 141685, at *3-4 (E.D. Pa. Aug. 31, 2017) (dismissing four officers that were mentioned in passing on the police incident report as having responded to the motor vehicle incident involving the plaintiff because there was no evidence that they had any personal involvement in the arrest or trial of the plaintiff). As to Detective Price, Groce alleges that he joined in the investigation during the photo array and that his name is on the arrest report. *See* First Opp. 17; Second Opp. 6-7. However, his involvement, if any, in the photo array is not supported by the evidence and his arrest of Groce following charges is not evidence that he violated Groce's constitutional rights. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (holding that an officer executing an arrest warrant has no constitutional duty to independently investigate every claim of innocence). As to Officer Vivarina and Officer Travaline, the evidence shows that they responded to a radio call at 6378 Torresdale Avenue, secured Apartment A, and contacted the Special Victims Unit. *See* PC Affidavit; Crime Scene Log, Ex. K, ECF No. 68-2. Groce complains that they conducted a search of his apartment without a warrant and, also, that they failed to collect certain items. *See* First Opp. 16-17; Second Opp. 6-7. However, there is no pending claim related to Groce's

Fourth Amendment rights for an alleged unconstitutional search and the officers had "no further constitutional duty to continue their investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination."[6] *Lincoln v. Hanshaw*, 375 F. App'x 185, 190 (3d Cir. 2010) (citing *Baker*, 443 U.S. at 145-46). The fact that Officer Vivarina and Officer Travaline responded to the scene of the alleged attempted rape does not establish their personal involvement in the subsequent charges and prosecution. *See Hallman v. Pa. State Police Trooper*, No. 1:21-CV-02111, 2023 U.S. Dist. LEXIS 1065, at *13-14 (M.D. Pa. Jan. 4, 2023) (dismissing for lack of personal involvement, two troopers that were simply present at the shooting incident that led to charges being filed against the plaintiff). Summary judgment is entered in favor of Detective Price, Officer Vivarina, and Officer Travaline for their lack of personal involvement and, also, for the reasons discussed below regarding Detective McGoldrick and Detective Ruth.

      **B.**      **Groce has failed to produce evidence supporting every element of a malicious prosecution claim against Detective McGoldrick and Detective Ruth.**

The evidence shows that Detective McGoldrick drafted an affidavit of probable cause for Groce's arrest for attempted rape and related charges and sent the affidavit to the Philadelphia DAO for approval. That affidavit summarized the statements given by Ms. Stippick and Mr. Verkitus to Detective McGoldrick. Detective McGoldrick and Detective Ruth, who spoke with Ms. Stippick during the photo array, prepared reports on the investigation. Thus, Groce has produced evidence of the personal involvement of Detective McGoldrick and Detective Ruth.

---

[6]    The existence of probable cause is discussed in greater detail in the next subsection.

Nevertheless, there is no evidence showing that the reports of Detective McGoldrick and Detective Ruth were false or misleading or that the Detectives concealed[7] exculpatory evidence from the DAO, which is needed to establish that the first element of a malicious prosecution claims- that the defendants[8] initiated a criminal proceeding.  *See Hall*, 2020 WL 5820731, at *12 (holding that a police officer, as opposed to a prosecutor, may not be said to have initiated criminal proceedings unless that officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion").  Groce's argument to the contrary is wholly without support and is therefore insufficient to survive summary judgment.  *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions.").  Groce contends that Defendants gave false information, but fails to show that any information they provided to the DAO did not originate from Ms. Stippick and Mr. Verkitus.

It is the veracity of the statements of Ms. Stippick and Mr. Verkitus that Groce actually contests.  Whether these statements were truthful, however, is not at issue in a malicious prosecution claim.[9]  *See Wright*, 409 F.3d at 603 (explaining that the probable cause inquiry

---

[7]     Groce argues that Detective McGoldrick omitted information given to the DAO but fails to produce evidence of any omission or to even identify any such information allegedly omitted. To the extent that the alleged omissions are based on the alleged failure to investigate, Detective McGoldrick had no constitutional duty to investigate.  *See Garcia v. Wind Creek Bethlehem, LLC*, No. 5:22-cv-00292, 2022 U.S. Dist. LEXIS 163655, at *33 (E.D. Pa. Sep. 12, 2022) ("Once probable cause exists, a police officer has no constitutional obligation to investigate further.").

[8]     Although this section focuses on the evidence against Detective McGoldrick and Detective Ruth, the requirements and insufficiencies are applicable to all Defendants.

[9]     Groce makes much about the fact that the charges against him were dismissed, but whether he was eventually convicted of the charges for which he was arrested is irrelevant.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").  The dismissal is relevant, however, to establish that the proceedings were terminated in Groce's favor, which is

"does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate").  An officer is "not required to make accurate credibility determinations or investigate every issue that might suggest [a suspect's] innocence." *McCoy v. Taylor*, No. 18-4123, 2019 U.S. Dist. LEXIS 103182, at *11 (E.D. Pa. June 20, 2019). "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997). Probable cause was present here based on Ms. Stippick's statement to Detective McGoldrick describing her attempted rape, along with the information corroborating the same,[10] and on her identification of Groce as the assailant.  *See McCoy*, 2019 U.S. Dist. LEXIS 103182, at *11 (granting summary judgment in favor of an officer accused of malicious prosecution because the information provided by the woman complaining she was raped combined with her photographic identification of the plaintiff were sufficient to establish probable cause).  Groce has therefore also failed to produce evidence establishing the third element of a malicious prosecution claim- that the attempted raped charges lacked probable cause.  Given the presence of probable cause, Detective McGoldrick's alleged failure to uncover exculpatory evidence is insufficient to defeat summary judgment because he had no obligation to investigation any further.  *See Merkle v.*

---

but one of the required elements.  This element- favorable termination- is satisfied here because the attempted rape and related charges were nol prossed for insufficient evidence based on Ms. Stippick's failure to appear at a preliminary hearing.  *See Geness*, 902 F.3d at 356 (3d Cir. 2018) (holding that the abandonment of charges for "insufficient evidence" is a favorable termination).
[10]   Ms. Stippick's statement was consistent with her outcry statement to Mr. Verkitus, her physical injuries, her demeanor at the police station, her description of the location of the alleged attempted rape, her description and identification of Groce, and Groce's connection to the location. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) (holding that "a credible report from a credible eyewitness" can be sufficient to establish probable cause); *Cooper v. City of Phila.*, No. 13-6222, 2015 U.S. Dist. LEXIS 17124, at *13 (E.D. Pa. Feb. 12, 2015) (finding probable cause to arrest based on the victim's statement and that of a witness to the aftermath of a robbery, regardless of the plaintiff's arguments regarding eyewitness identification and the reliability of the victim).

*Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) (holding that an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed").

The malicious prosecution claim further fails on the fourth element because Groce has not adduced any evidence that Detective McGoldrick and Detective Ruth acted maliciously or for any other purpose than to bring Groce to justice. There is no evidence of any malicious intent by either Defendant. To the extent Groce suggests that their failure to conduct additional investigations was malicious, any such suggestion is defeated by the presence of probable cause. *See Banks v. Owens*, No. 17-5423, 2018 U.S. Dist. LEXIS 202108, at *10 (E.D. Pa. Nov. 29, 2018) (rejecting the plaintiff's suggestion that the officer held ill intent because he would have uncovered exculpatory evidence if he had pursued the investigation more diligently). Moreover, even if the Detectives were mistaken in their belief that probable cause existed, there is no evidence to show that they had any reason not to believe Ms. Stippick and Mr. Verkitus. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable."); *Malhan v. AG N.J.*, 848 F. App'x 517, 521 (3d Cir. 2021) (concluding that no reasonable jury could determine that the City acted maliciously in bringing charges, but was, instead, deceived by the complainant's allegations).

Because Groce has failed to adduce evidence establishing the first, third, and fourth element of his malicious prosecution claim,[11] summary judgment is granted in favor of all Defendants and against Groce.

## VI. CONCLUSION

Groce has failed to produce evidence showing that Detective Price, Officer Vivarina, and Officer Travaline were personally involved in his alleged malicious prosecution. The involvement of these officers in responding to the initial police call or in arresting Groce once charges were already filed does not establish their involvement with bringing or continuing the criminal prosecution. Moreover, there is no evidence showing that any officer, including Detective McGoldrick and Detective Ruth, falsified any evidence or otherwise interfered with the prosecutor's decision to bring charges. Groce's claim essentially centers on the alleged false report by the complainant, but there is no evidence showing that any officer had reason to disbelieve her, nor did they have any duty to continue investigating to find exculpatory evidence. Rather, the evidence was sufficient to provide probable cause to arrest Groce for attempted rape and related charges. Accordingly, summary judgment is granted in favor of all Defendants and against Groce.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[11] Defendants' argument that Groce has failed to adduce evidence of a deprivation of liberty – the fifth element- because he was credited for the time he spent in custody toward another case is unavailing because the courts cannot undue the violation. *See Postie v. Frederick*, No. 3:14-00317, 2015 U.S. Dist. LEXIS 32364, at *23 (M.D. Pa. Mar. 17, 2015) (rejecting the defendants' argument that the plaintiff's malicious prosecution claim would be impacted if he received credit for time spent in custody on the challenged arrest toward another sentence).